UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY C. DUNLAP, SR., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 2:06CV20 JCH |
| | ) | |
| G. JORGENSON, E. CONLEY, AND | ) | |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Correctional Medical Services, Inc., Gerald Jorgenson, and Dr. Elizabeth Conley's Motion for Summary Judgment, filed April 2, 2008. (Doc. No. 66). The matter is fully briefed and ready for disposition.

## BACKGROUND

At all times relevant hereto, Plaintiff Anthony C. Dunlap, Sr. ("Plaintiff") was an inmate at the Moberly Correctional Center ("MCC") in Moberly, Missouri. (Defendants' Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment ("Defendants' Facts"), ¶ 1). Defendant Gerald Jorgenson ("Jorgenson") was the Regional Administrator, and Defendant Dr. Elizabeth Conley ("Conley") was the Regional Medical Director. (Id., ¶¶ 41-42).

On May 16, 2003, Plaintiff complained of a bruised right eye, and was evaluated by non-defendant Nurse Fitzgerald, who referred him to a doctor for follow-up care. (Defendants' Facts,

¶¶ 4, 6, citing Exh. A[1], 0046). Plaintiff was scheduled to be seen by Dr. John Sandru on May 20, 2003, but failed to show up for the appointment. (Id., ¶ 7).[2]

On May 23, 2003, non-defendant Dr. Hampton[3] gave a verbal order for Plaintiff to receive a prescribed antibiotic, Levaquin, and to return to the clinic for a follow-up appointment on May 27. (Defendants' Facts, ¶ 9, citing Exh. A, 0048). Dr. Hampton examined Plaintiff on May 27 for his complaints of facial pain. (Id., ¶ 10). He noted tenderness over Plaintiff's maxilla, and determined that Plaintiff possibly was suffering from sinusitis. (Id.). Dr. Hampton also noted that Plaintiff was not responding to the Levaquin, and that alternative medication would be considered. (Id., ¶ 11).

On June 2, 2003, Dr. Hampton again examined Plaintiff, noting right maxillary and periorbital swelling. (Defendants' Facts, ¶ 12, citing Exh. A, 0049, 0521). Dr. Hampton diagnosed Plaintiff with chronic sinusitis, and prescribed the antibiotic Augmentin, used in the treatment of sinusitis and infections. (Id.). On June 5, Plaintiff reported to sick call complaining of diarrhea, believed to be a side effect of the Augmentin. (Id., ¶ 13). Dr. Hampton was contacted, and ordered the Augmentin discontinued. (Id., ¶¶ 13, 14, citing Exh. A, 0051).

On June 12, 2003, Plaintiff spoke with nursing staff regarding his medications. (Defendants' Facts, ¶ 17). Dr. Hampton was consulted, and verbally ordered Bactrim, a combination of two antibiotics used to treat bacterial infections. (Id., citing Exh. A, 0053). On June 16, Plaintiff again saw Dr. Hampton, and complained of diarrhea as a side effect of the Bactrim. (Id., ¶ 19, citing Exh. A, 0049-0050, 0522-0523). Dr. Hampton consulted with another physician, Dr. Baker, and pursuant

---

[1] Defendants' Exhibit A consists of select pages from Plaintiff's medical records from the period May, 2003, through July, 2004. (Defendants' Facts, ¶ 2).

[2] Plaintiff maintains he was never notified of the appointment. (Plaintiff's Response to Defendants' Statement of Uncontradicted Facts ("Plaintiff's Response to Defendants' Facts"), ¶ 7).

[3] Dr. Hampton originally was a named defendant in this action, but was not included when Plaintiff filed his Amended Complaint on March 27, 2007.

to Dr. Baker's recommendation, prescribed Doxycycline, another antibiotic used to treat bacterial infections. (Id., ¶¶ 20-21). On July 24, 2003, Dr. Hampton examined Plaintiff, and noted some swelling but overall improvement of Plaintiff's condition. (Defendant's Facts, ¶ 23, citing Exh. A, 0054, 0524).[4]

On September 9, 2003, Dr. Hampton noted Plaintiff's facial pain was improved, but that there were still dark areas under his eyes. (Defendants' Facts, ¶ 25, citing Exh. A, 0060, 0527). Dr. Hampton assessed Plaintiff's sinusitis as improved, and continued Plaintiff on his medications. (Id.). During an examination on October 2, 2003, Dr. Hampton noted no change in the dark patch under Plaintiff's right eye. (Id., ¶ 26, citing Exh. A, 0061-0062, 0528). Although Plaintiff alleges he was at that time suffering from swelling and tenderness, Dr. Hampton noted neither of those conditions. (Id.; see also Plaintiff's Response to Defendants' Facts, ¶ 26).

On or about October 7, 2003, Plaintiff submitted an Informal Resolution Request ("IRR"), requesting to be seen by an ear, nose and throat specialist ("ENT") or an infectious disease specialist. (Defendants' Exh. B). Plaintiff's IRR states in part:

> My right eye has been swollen and discolored going on 6 months. Have been taking antibiotics for the whole duration. Had follow-up with doctor, he stated that I should just wait 6 months to 1 year for problem to go away. Still think that there is something wrong.

(Id.). On October 14, 2003, non-defendant Nurse Gale Bailey[5] responded to Plaintiff's IRR in relevant part as follows:

---

[4] Plaintiff's medical records indicate that he reported his facial pain to be "much improved." (Defendants' Exh. A, 0054). Plaintiff, however, denies reporting any improvement in facial pain during that visit. (Plaintiff's Response to Defendants' Facts, ¶ 23).

[5] Nurse Bailey originally was a named defendant in this action, but was voluntarily dismissed by Plaintiff on December 11, 2006. (Doc. No. 39).

- 3 -

> Your IRR # was received and reviewed by the medical unit on October 8, 2003. You were interviewed on October 14, 2003 in regard to your complaint. As we discussed I will set you up to see Dr. Blackburn for a second opinion regarding your sinus complaints. At this time you have not been refereed (sic) to see a specialist.

(Defendants' Exh. C).

Plaintiff met with non-defendant Dr. Blackburn on October 20, 2003. (Defendants' Facts, ¶ 29). Dr. Blackburn prescribed Ibuprofen to treat the pain, and requested and was approved for a referral for a CT scan of Plaintiff's sinuses. (Id., citing Exh. A, 0067-0068, 0529).[6] On November 3, 2003, Plaintiff refused treatment from Dr. Hampton. (Id., ¶ 30, citing Exh. A, 0064, 0446).

On or about November 7, 2003, Plaintiff prepared an Offender Grievance related to his allegedly unresolved IRR. (Defendants' Exh. D). In his Grievance, Plaintiff re-states his course of medication treatment under Dr. Hampton's care, and describes the second opinion offered by Dr. Blackburn. (Defendants' Facts, ¶ 32, citing Defendants' Exh. D). Plaintiff takes issue with Dr. Hampton's course of care. (Id.). Dr. Hampton responded to Plaintiff's Offender Grievance on November 17, 2003, in relevant part as follows:

> Your Grievance # mcc-03-855 was received and reviewed by the medical unit on November 7, 2003. You were [s]cheduled for a second opinion on October 20, 2003 with Dr. Blackburn to see me on November 3, 2003. According to your medical records you saw Dr. Blackburn and he prescribed motrin 800 mg for your facial pain and a referral for a CT of the sinuses was made for you. According to your records you were scheduled to see me on November 3, 2003 but you declined that opportunity. You will be scheduled to see me after your CT scan has been sent to the medical department.

(Defendants' Exh. E).

---

[6] Plaintiff notes Dr. Blackburn's simultaneous request for an ENT consultation was not approved. (Plaintiff's Response to Defendants' Facts, ¶ 29, citing Defendants' Exh. A, 0068). Plaintiff's medical records indicate Defendant Conley requested that Dr. Blackburn first obtain results from the CT scan. (Defendants' Exh. A, 0068).

- 4 -

Plaintiff underwent a CT scan of his sinuses on November 19, 2003. (Defendants' Facts, ¶ 35, citing Exh. A, 0067, 0750). A suspect mixed soft tissue mass was identified in the right antrum. (Id.). On or about December 4, 2003, Plaintiff filed an Offender Grievance Appeal, complaining he felt he was not given a direct answer as to why he was given antibiotics for over 6 months to treat his condition, or why Dr. Hampton, the subject of the Grievance, responded thereto. (Defendants' Facts, ¶¶ 36-37, citing Defendants' Exh. F).

On December 16, 2003, Plaintiff again refused treatment from Dr. Hampton. (Defendants' Facts, ¶ 38, citing Exh. A, 0447). Dr. Hampton reviewed Plaintiff's CT scans, however, and submitted a referral request for Plaintiff to be seen by an ENT at University of Missouri Health Care Hospital ("UMC"). (Id., ¶ 39). The referral request was approved. (Defendants' Exh. A, 0071).

On December 19, 2003, Defendants Jorgenson and Conley submitted their response to Plaintiff's Offender Grievance, as follows:

> Your grievance appeal has been received and reviewed. As well, your medical record has been reviewed.
>
> I understand that you feel that you were not properly diagnosed or treated for your condition.
>
> In reviewing your record, I found that you were scheduled to be seen by Dr. Sandru on 5/20/03 for a bruise under your eye that had lasted a month. You did not show up for that appointment. You were then seen by Dr. Hampton on 5/27/03. At that time he noted that you were tender over your maxilla. Pain over the maxilla is a common symptom with sinusitis. He noted that you were on Levaquin and scheduled you for a follow-up visit on 6/2/03. At that time you stated that you were not better, so he started you on Augmentin, a different antibiotic. He followed up with you on 6/16/03. He noted that some of the antibiotics had given you side effects such as diarrhea, so you were unable to complete the course of treatment with them. He consulted with Dr. Baker, Associate Regional Medical Director about an antibiotic that might not have the side effects you were experiencing so that you could complete a course rather than stopping midway due to side effects. It was decided to start you on doxycycline.

Dr. Hampton scheduled you for a follow-up visit in one month to see if the doxycycline had helped. He saw you on 7/27/03. At that time you told him that you were feeling much better but still experiencing some problems. Still your symptoms were the same as those commonly associated with chronic sinusitis. He changed your medication to Acyclovir as he felt that your problem might be due to a viral infection rather than a bacterial one.

Dr. Hampton saw you again on 9/9/03. At that time you again told him that you felt better. He started you on Benadryl to try and keep your nasal passages clear. He did note that you had a dark patch under your eye.

Dr. Hampton continued to follow you[r] case. He saw you again on 10/2/03. He found that your nasal passages were clear using the Benadryl, so he continued it. He did note that the dark area under your eye was still present.

You filed an IRR on 10/7/03 stating you felt something was wrong that had not been addressed. Gale Bailey, HSA arranged for you to be seen by Dr. Blackburn for a 2nd opinion as to your condition. Dr. Blackburn saw you on 10/20/03. Since Dr. Hampton had already tried antibiotics, Dr. Blackburn ordered a CT scan to look into your problem further. The CT scan was done on 11/19/03. This showed that there was some sort of mass in your sinus.

Dr. Hampton has tried to follow-up with you twice since then, on both 11/3/03 and 12/16/03. You have refused to be seen.

Conclusion: After reviewing your records, it appears that Dr. Hampton treated you for the symptoms with which you presented. On two different occasions, it is noted that your condition actually appeared to be improving. When you spoke with Ms. Bailey about your concern that you were not getting better, she provided you a 2nd opinion with Dr. Blackburn. Your chart also notes that an appointment has been set up with an ENT specialist for you, although I cannot share the date of that due to security concerns. The care you have received appears to have been appropriate for your symptoms.

(Defendants' Exh. G).[7] On December 31, 2003, Dr. Hampton reviewed the CT scan results with Plaintiff, and further informed Plaintiff that an ENT referral had been scheduled. (Defendants' Facts, ¶ 44, citing Exh. A, 0073).

On February 10, 2004, Plaintiff was transported to UMC, where a pathologist performed a fine needle aspiration for cytology on the right maxillary facial mass. (Defendants' Facts, ¶ 46, citing Exh. A, 0071-0072, 0790-0792). Plaintiff then was seen by Dr. Blackburn, who requested a referral to Dr. Renner, an ENT. (Id., ¶¶ 46-47). On March 2, Dr. Renner examined Plaintiff, noted that the needle biopsy was unsuccessful, and recommended an open biopsy or partial resection of the mass, and an evaluation by an ophthalmologist. (Id., ¶¶ 48-50, citing Exh. A, 0084, 0793). Dr. Renner noted that Plaintiff had no numbness or special problems with pain. (Id., ¶ 48). On March 3, Dr. Blackburn requested and was approved for Plaintiff's referral for an open biopsy with possibility of partial resection, and prescribed Salsalate and Acetaminophen. (Id., ¶¶ 51-52, citing Exh. A, 0082-0084).

On March 8, 2004, Dr. Hampton requested and was approved for Plaintiff's referral for an ophthalmologic evaluation at the Mason Eye Institute, to be performed prior to the resection. (Defendants' Facts, ¶ 53, citing Exh. A, 0085). Plaintiff was examined at the Mason Eye Institute on March 15, and they found no atrophy or eye problem. (Id., ¶ 54, citing Exh. A, 0086). That same day, Plaintiff underwent a right maxillary sinus mass biopsy at UMC, and was diagnosed with a right maxillary bone and sinus mass, consistent with giant cell granuloma. (Id., ¶ 55, citing Exh. A, 0794-0804).

---

[7] Plaintiff filed a Second Appeal on January 1, 2004, which was denied by the Missouri Department of Corrections Central Office Legal Department on July 20, 2004. (Defendants' Exhs. H, I).

Upon his return to MCC, Plaintiff was admitted to the Transitional Care Unit for observation. (Defendants' Facts, ¶ 56, citing Exh. A, 0089-0090). Dr. Blackburn examined Plaintiff on March 16, 2004, and advised him the giant cell granuloma was benign. (Id., ¶ 57, citing Exh. A, 0091).

On or about April 27, 2004, Dr. Blackburn requested Plaintiff's referral for surgery to remove the tumor that was partially invading Plaintiff's orbit. (Defendants' Facts, ¶ 58, citing Exh. A, 0093-0094). Dr. Conley approved the request for surgical intervention to remove the benign mass. (Id., ¶ 59). On or about May 26, 2004, Plaintiff underwent surgery at UMC for resection of the right orbital maxillary tumor, and was discharged from UMC on May 28, 2004. (Id., ¶ 60, citing Exh. A, 0094, 0807-0819).

Plaintiff filed his original Complaint in this matter on March 17, 2006. (Doc. No. 3). In his Amended Complaint, filed March 27, 2007, and brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges Defendants Correctional Medical Services, Inc. ("CMS"), Conley, and Jorgenson violated his constitutional rights by demonstrating deliberate indifference to his serious medical needs. (Doc. No. 56). As stated above, Defendants filed the instant Motion for Summary Judgment on April 2, 2008.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Defendant Jorgenson

In his Amended Complaint, Plaintiff does not allege Defendant Jorgenson was personally involved in providing any of his medical care, or that his care was in any way deficient. Rather, Plaintiff's claim against this Defendant appears to be based solely on his denial of Plaintiff's Grievance Appeal. "A 'grievance procedure does not confer any substantive constitutional right upon prison inmates.'" Bostic v. Babich, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008), quoting Barrett v. Correctional Medical Services, Inc., 2008 WL 413841 at *2 (E.D. Mo. Feb. 13, 2008). Therefore, "the denial of grievances, in and of itself, cannot support a substantive constitutional claim." Walls v. Highsmith, 2007 WL 4468694 at *2 (E.D. Mo. Dec. 17, 2007), citing Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002). See also Bostic, 2008 WL 906801 at *7 (internal quotations and citations omitted) ("The denial of [a grievance] is insufficient to impose liability and does not result in a constitutional violation.").

Upon review of the record, the Court notes that in his response to Plaintiff's Grievance Appeal, Defendant Jorgenson provided Plaintiff with a detailed summary of Plaintiff's prior eight months of care, and then concluded the care Plaintiff received was "appropriate for [his] symptoms." (See Defendant's Exh. G).[8] Defendant Jorgenson further noted that at the time of his response, Plaintiff had undergone a CT scan revealing a mass in his sinus, and was scheduled to meet with an ENT specialist. (Id.). Based upon the foregoing, the Court finds no evidence that Defendant Jorgenson's involvement in Plaintiff's grievance process deprived Plaintiff of a constitutional right. Defendant Jorgenson's Motion for Summary Judgment must therefore be granted.

## II.     Defendant Conley

Plaintiff's claims against Defendant Conley are based on her denial of his Grievance Appeal[9], and her refusal to approve his referral to an ENT until the results of his CT scan were reviewed by the attending physician. With respect to the latter claim, the Eighth Circuit has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and [o]ne condition of confinement is the medical attention given to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "To succeed on a claim of deprivation of medical care in violation of the Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs." Moots v. Lombardi, 2005 WL 4541944 at *5 (E.D. Mo. Feb. 10, 2005), citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).

---

[8] As described in great detail above, Plaintiff did receive extensive care for his condition, as prison medical records indicate he was seen by medical personnel at least twelve times between May, 2003, and April, 2004.

[9] Defendant Conley's Motion for Summary Judgment with respect to her involvement in Plaintiff's grievance process will be granted under the same reasoning applied to Defendant Jorgenson in Section I, supra.

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted). A prison official acts with the requisite deliberate indifference when that official, "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). "Mere negligence or medical malpractice [is] insufficient to rise to a constitutional violation." Moots, 2005 WL 4541944 at *5, citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Upon consideration, the Court finds that assuming, arguendo, Plaintiff has established the existence of a serious medical need, he cannot show Defendant Conley exhibited deliberate indifference to that need. Rather, the Court's review of Plaintiff's medical records reveals Defendant Conley approved the following: a referral for a CT scan of Plaintiff's sinuses on October 21, 2003; a referral to an ENT specialist on December 16, 2003; a second referral to the ENT on February 12, 2004; a third referral to the ENT on March 4, 2004; a referral to the Mason Eye Institute on March 8, 2004; and a referral for surgery on April 30, 2004. (See Defendants' Exh. A, 0067, 0071, 0081, 0084, 0085, 0094). Defendant Conley only once denied Plaintiff's request for a referral to an ENT, on October 21, 2003, pending the results of his CT scan. (Defendant's Exh. A, 0068). Under these circumstances, the Court finds absolutely no evidence that Defendant Conley exhibited deliberate indifference to Plaintiff's serious medical needs. Defendant Conley's Motion for Summary Judgment must therefore be granted.

### III. Defendant CMS

In his Amended Complaint, Plaintiff alleges that his treatment was delayed due to a, "widespread pattern of cost-cutting measures employed by Correctional Medical Services, Inc." (Amended Compl., P. 2). Plaintiff offers no evidence of these alleged cost-cutting measures, however, nor does he show a widespread pattern of unconstitutional behavior resulting from the policies. To the contrary, as shown above Plaintiff requested and received a great deal of medical attention during the time period at issue. Defendant CMS's Motion for Summary Judgment will therefore be granted.[10]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Correctional Medical Services, Inc., Gerald Jorgenson, and Dr. Elizabeth Conley's Motion for Summary Judgment (Doc. No. 66) is **GRANTED**, and Plaintiff's claims against Defendants CMS, Jorgenson and Conley are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Counter-Motion for Summary Judgment (Doc. No. 69) is **DENIED**.

Dated this 7th day of October, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[10] To the extent Plaintiff's claim against CMS is based on respondeat superior, due to CMS's position as Dr. Hampton's employer, "such claim fails because the doctrine of respondeat superior is inapplicable in § 1983 actions." Walls, 2007 WL 4468694 at *2 (citations omitted).